UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JERRY HARTRIM,

                  Plaintiff,

    v.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, et al.,

                  Defendants.

Case No. 2:11-cv-00003-MMD-PAL

ORDER

(Def.'s Motion to Dismiss – dkt. no. 28;
Defs.' Motion for Summary Judgment –
dkt. no. 29)

I.    **SUMMARY**

    Before the Court are Defendant California Hotel and Casino's ("CHC") Motion to Dismiss (dkt. no. 28) and Defendants Las Vegas Metropolitan Police Department ("LVMPD" or "Department"), Officer Ferrante, and Officer Delaria's Motion for Summary Judgment (dkt. no. 29).

II.    **BACKGROUND**

    On November 19, 2008, Plaintiff Jerry Hartrim and his wife arrived in Las Vegas and checked in to a guest room at Sam's Town Hotel and Casino ("Sam's Town"), a hotel operated by CHC.  After checking in, Hartrim and his wife left the room at approximately 8:30 a.m., and returned at approximately 5:05 p.m.  They tried to re-enter the room, but noticed that the door was locked from the inside.  A woman then answered the door, and told Hartrim that she had been assigned this room.  The woman, later

1
2
3
4
5

identified as Margret Wolke,[1] had been reported missing earlier in the day, and suffers from Alzheimer's disease.   Wolke eventually granted access to the Hartrims, who discovered that Wolke had removed their belongings to the floor and had eaten some of their food.  Hartrim called the front desk from the room, and his wife walked down to the hotel lobby.

6
7
8
9
10
11
12
13
14
15
16

In response, Sam's Town security and a front desk staff member arrived at the Hartrims' room along with LVMPD officers, including Defendants Delaria and Ferrante. At this point, the parties dispute the relevant facts.  After being asked to leave the room, Hartrim alleges that three LVMPD officers, including Delaria and Ferrante, grabbed him and pushed him into the hallway opposite the room doorway and shouted at him to stop resisting.   LVMPD alleges that an agitated Hartrim refused to calm down upon the officers' arrival, and shoved an officer after the officer placed his arm on Hartrim. Hartrim was handcuffed and detained, then taken downstairs and placed in the squad car.  After running a background check, the officers released Hartrim and gave him a citation for obstructing an officer.  The case against Hartrim was ultimately dismissed on May 4, 2009.

17
18
19
20
21
22

On November 15, 2010, Hartrim sued Defendants in state court alleging various constitutional violations, including violations of his First, Fourth, and Fourteenth Amendment rights, as well as common law conspiracy, negligence, false imprisonment, and intentional infliction of emotional duress.  After the Court dismissed Hartrim's state law claims against LVMPD and the officers (*see* dkt. no. 17), Hartrim filed his First Amended Complaint ("FAC") on August 4, 2011.

23

III.   **LEGAL STANDARD**

24
25

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

26

27
28

---

[1]Hartrim's papers identify the woman as "Mrs. Wolz."  For consistency, the Court employs CHC's naming.

2

F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do

1    more than simply show that there is some metaphysical doubt as to the material facts."

2    *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The

3    mere existence of a scintilla of evidence in support of the plaintiff's position will be

4    insufficient."  *Anderson*, 477 U.S. at 252.

5    **IV.    DISCUSSION**

6        **A.    CHS's Motion to Dismiss**

7        CHS seeks dismissal of Hartrim's various claims against it.   As the parties'

8    arguments rely on facts gathered in discovery, this Court construes CHS's Motion as one

9    seeking summary judgment.  *See Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528,

10   1532-33 (9th Cir. 1985) (noting that when parties invite district court to look beyond the

11   pleadings in evaluating a Rule 12(b)(6) motion, the motion must be treated as one for

12   summary judgment under Rule 56).

13           **1.    § 1983 Claim**

14       First, Hartrim fails to demonstrate that CHS acted under color of state law, as

15   required to state a 42 U.S.C. § 1983 claim.  Hartrim argues that CHS employees are

16   liable for various negligent acts, but does not argue any relationship between CHS

17   employees and LVMPD officers.  Hartrim only argues that hotel security asked LVMPD

18   officers to enter Hartrim's room.  These facts do not support a finding of § 1983 liability

19   for a private entity like CHS.

20       "Under § 1983, a claim may lie against a private party who is a willful participant in

21   joint action with the State or its agents.  Private persons, jointly engaged with state

22   officials in the challenged action, are acting under color of law for purposes of § 1983

23   actions."  *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 899-900 (9th Cir. 2008)

24   (internal quotation omitted).   The plaintiff must provide facts tending to show that

25   [Defendants] acted under color of state law or authority in order to demonstrate joint

26   action.  *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2008).  "[M]erely

27   complaining to the police does not convert a private party into a state actor."  *Collins v.*

28   *Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989).  Here, Hartrim has provided no facts

1  that support a finding of joint action beyond merely calling the police to the scene of the

2  incident.

3      Private individuals may also establish joint action through a conspiracy.

4  *Womancare*, 878 F.2d at 383.  An actionable conspiracy consists of a combination of

5  two or more persons who, by some concerted action, intend to accomplish an unlawful

6  objective for the purpose of harming another, and damage results from the act or acts.

7  *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989) (*citing Collins v. Union Fed.*

8  *Savings & Loan,* 662 P.2d at 622 (Nev. 1983)).  Hartrim cannot support a showing of a

9  conspiracy, as he cannot demonstrate any intent on the part of CHC staff to accomplish

10  an unlawful objective.  Although CHC staff may have let LVMPD into Hartrim's room,

11  there are no facts that demonstrate CHC staff's involvement in the circumstances that

12  led to Hartrim being grabbed or detained.  Therefore, no genuine issue of material fact

13  exists with respect to the § 1983 claims against CHC.

14      **2.  False Imprisonment**

15      CHC also seeks judgment on Hartrim's false imprisonment claim.  "To establish

16  false imprisonment of which false arrest is an integral part, it is necessary to prove that

17  the person be restrained of his liberty under the probable imminence of force without any

18  legal cause or justification."  *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981)

19  (quoting *Marschall v. City of Carson*, 464 P.2d 494, 497 (Nev. 1970)).  "[A]n actor is

20  subject to liability to another for false imprisonment 'if (a) he acts intending to confine the

21  other or a third person within boundaries fixed by the actor, and (b) his act directly or

22  indirectly results in such a confinement of the other, and (c) the other is conscious of the

23  confinement or is harmed by it.'"  *Hernandez*, 634 P.2d at 671 (*quoting* Restatement

24  (Second) of Torts § 35 (1965)).

25      Here, Hartrim failed to introduce any evidence to raise a genuine issue of material

26  fact as to CHC's liability for false imprisonment.  There are no allegations that CHC was

27  involved in intentional confinement or detention of Hartrim.  The evidence demonstrates

28  that LVMPD officers detained Hartrim outside of CHC's involvement.  Hartrim provides

5

1   no evidence to suggest otherwise, and thus cannot sustain a claim of false imprisonment

2   against CHC.

3               **3.    Conspiracy**

4       For the same reasons discussed above, Hartrim's conspiracy claim against CHC

5   also fails.  No evidence exists to demonstrate an intent to commit unlawful acts.

6   Although CHC employees might have requested officers enter Hartrim's room, this fact

7   does not establish conspiracy liability in the absence of an intent to commit unlawful acts

8   in concert with the officers.

9               **4.    Negligence**

10      "To prevail on a traditional negligence theory, a plaintiff must demonstrate that (1)

11  the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3)

12  the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered

13  damages."  *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012).  "Courts

14  often are reluctant to grant summary judgment in negligence actions because whether a

15  defendant was negligent is generally a question of fact for the jury to resolve."  *Id.*  "To

16  establish entitlement to judgment as a matter of law, Costco must negate at least one of

17  the elements of negligence."  *Id.*

18      It is unclear whether Hartrim raises negligence arising out of the force deployed

19  on him or based on CHC staff's actions in allowing the unauthorized guest in his room.

20  To the extent that he seeks to hold CHC liable for the force used on Hartrim and his

21  detention, Hartrim fails to provide enough evidence of a breach.  He cannot demonstrate

22  that CHC staff were involved in the use of force against him, nor can he show that CHC

23  staff were involved in his detention.  However, Hartrim has raised a genuine issue of

24  material fact as to CHC staff's negligence with respect to the unauthorized access to his

25  room by Wolke.  As the provider of hospitality services to Hartrim, CHC owed Hartrim a

26  duty to ensure that his room would be safe from unauthorized access.  Hatrim raised a

27  fact issue as to whether CHC breached this duty and caused him injury.

28  ///

### 5. Intentional Infliction of Emotional Distress

"To establish a cause of action for intentional infliction of emotional distress, Barmettler must establish the following: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998).

Hartrim fails to establish this cause of action against CHC.  He argues that the excessive force lodged against him and LVMPD's detention caused this distress, but he does not argue that CHC was involved in that injury.  Accordingly, CHC cannot be held liable under this theory for their conduct, as Hartrim fails to raise a genuine issue of fact as to any "extreme and outrageous" conduct of CHC that caused this injury.

### B. LVMPD's Motion for Summary Judgment (dkt. no. 29)

Defendants LVMPD, Delaria, and Ferrante (hereinafter "LVMPD") seek summary judgment on Hartrim's Fourth Amendment claims against Officers Delaria and Ferrante, as well as on Hatrim's *Monell* claims against LVMPD.  The Court denies the former, but grants the latter.

### 1. Claims Against Individual Officers

The parties offer disputed accounts as to what occurred in the hallway outside of Hartrim's hotel room.  Hartrim argues that while he was agitated at the presence of an unauthorized individual in his room, he did not provoke or contact LVMPD officers.  He alleges that LVMPD's use of force was excessive and unjustified, and led to an unlawful detention and citation.[2]  LVMPD officers paint a different picture, arguing that their response to a live investigation was justified in light of the tense atmosphere and Hartrim's shoving of one of the officers.  Taken the facts in the light most favorable to ///

_____

[2]Hartrim does not allege an excessive force claim in his FAC.  He only challenges his unlawful detention and arrest.

1  Hartrim, a reasonable juror could find that the officers violated Hartrim's Fourth
2  Amendment rights.

3       The legality of LVMPD's officers' conduct requires analyzing two sets of facts in
4  this case: the seizure and handcuffing of Hartrim, and Hartrim's citation.  In *Terry v.*
5  *Ohio,* the Supreme Court created a limited exception to the general requirement that
6  officers must have probable cause before conducting a search.  392 U.S. 1, 30 (1968).
7  The Court held that officers may conduct an investigatory stop consistent with the Fourth
8  Amendment "where a police officer observes unusual conduct which leads him
9  reasonably to conclude in light of his experience that criminal activity may be afoot . . . ."
10 *Id.*  In addition, an officer may conduct a brief pat-down (or frisk) of an individual when
11 the officer reasonably believes that "the persons with whom he is dealing may be armed
12 and presently dangerous."  *Id.*  "[T]he stop and the frisk, must be analyzed separately;
13 the reasonableness of each must be independently determined."  *United States v.*
14 *Thomas,* 863 F.2d 622, 628 (9th Cir.1988).

15      In *Terry,* the Court also explained that the analysis regarding whether a frisk was
16 constitutional "is a dual one," that asks (1) "whether the officer's action was justified at its
17 inception," and (2) whether the officer's action was "confined in scope" by engaging in a
18 "carefully limited search of the outer clothing . . . in an attempt to discover weapons
19 which might be used to assault" an officer.  *Terry*, 392 U.S. at 20, 29-30.  The officer
20 must provide "specific and articulable facts" that indicate something more than a general
21 "governmental interest in investigating crime."  *Id.* at 21, 23.  Indeed, a pat-down "is not
22 justified by any need to prevent the disappearance or destruction of evidence of crime.
23 The *sole justification* of the search in the present situation is the protection of the police
24 officer and others nearby . . . ."  *Id.* at 29 (emphasis added) (citation omitted).  Thus, the
25 appropriate analysis is "whether a reasonably prudent man in the circumstances would
26 be warranted in the belief that his safety or that of others was in danger."  *Id.* at 27.

27      Under ordinary circumstances, drawing weapons and using handcuffs are not part
28 of a *Terry* stop.  *Washington v. Lambert*, 98 F.3d 1181, 1187 (9th Cir. 1996).

1   Nevertheless, courts "allow intrusive and aggressive police conduct without deeming it
2   an arrest . . . when it is a reasonable response to legitimate safety concerns on the part
3   of the investigating officers." *Id.* at 1186; *accord Alexander v. Cnty. of Los Angeles*, 64
4   F.3d 1315, 1320 (9th Cir. 1995) ("It is well settled that when an officer reasonably
5   believes force is necessary to protect his own safety or the safety of the public,
6   measures used to restrain individuals, such as stopping them at gunpoint and
7   handcuffing them, are reasonable.").   In determining whether a stop amounts to an
8   arrest, courts also consider "the specificity of the information that leads the officers to
9   suspect that the individuals they intend to question are the actual suspects being sought"
10  and "the number of police officers present." *Lambert*, 98 F.3d at 1189-90.

11          Here, a question of fact exists as to the circumstances that led to Hartrim's *Terry*
12  stop.   LVMPD argues that Hartrim's shoving of LVMPD officers coupled with the live
13  investigation into the whereabouts of Ms. Wolke necessitated Hartrim's handcuffing and
14  detention.   Hartrim disputes this contention, and argues that LVMPD officers initiated the
15  *Terry* stop after he raised his voice to the officers.   Drawing all inferences in favor of
16  Hartrim, a jury may reasonably conclude that the officers' investigatory detention lacked
17  reasonableness, and was not justified on the basis of officer safety or the ongoing
18  investigation.   The same is true for LVMPD's citation of Hartrim.   The Court's review of
19  the surveillance video lodged by Hartrim does not conclusively resolve this factual
20  dispute, as the grainy footage makes it difficult to determine the lawfulness of LVMPD's
21  conduct.   This factual dispute precludes a finding of qualified immunity, *see Torres v.*
22  *City of Los Angeles*, 548 F.3d 1197, 1210-11 (9th Cir. 2008) (noting that where
23  "historical facts material to the qualified immunity determination are in dispute," a jury
24  must decide those facts), and LVMPD's Motion with respect to the individual officers is
25  denied.

26          **2.**     **LVMPD's *Monell* Liability**

27          LVMPD also seeks summary judgment on Hartrim's constitutional claims against
28  the Department.   As LVMPD correctly notes, "[a] government entity may not be held

1  liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be

2  shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City*

3  *of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (*citing Monell v. Dep't of Soc. Servs. of the*

4  *City of New York*, 436 U.S. 658, 694 (1978)).   "In order to establish liability for

5  governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff]

6  possessed a constitutional right of which [s/]he was deprived; (2) that the municipality

7  had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's

8  constitutional right; and, (4) that the policy is the moving force behind the constitutional

9  violation.'" *Dougherty*, 654 F.3d at 900 (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of*

10 *Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

11      Failure to train may amount to a policy of "deliberate indifference," if the need to

12 train was obvious and the failure to do so made a violation of constitutional rights likely.

13 *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).  Similarly, a failure to supervise that

14 is "sufficiently inadequate" may amount to "deliberate indifference."   *Davis v. City of*

15 *Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989).   Mere negligence in training or

16 supervision, however, does not give rise to a *Monell* claim.  *Id.*

17      In support of his *Monell* claim, Hartrim argues that LVMPD's failure to discipline

18 the offending officers demonstrates the Department's policy or custom justifying

19 excessive force and unreasonable detentions.  He appends two exhibits, a news story

20 involving calls for investigations of LVMPD shootings, as well as an American Civil

21 Liberties Union ("ACLU") request for a Department of Justice investigation into the

22 LVMPD's alleged persistent violations of individuals' Fourth and Fourteenth Amendment

23 rights.  It is clear that a single instance of unconstitutional conduct by a non-policymaking

24 employee cannot on its own demonstrate a policy or practice of unconstitutional conduct.

25 *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989) (single incident of

26 excessive force by police officers inadequate to establish liability); *see, e.g., Peschel v.*

27 *City of Missoula,* 686 F. Supp. 2d 1107, 1124 (D. Mont. 2009) (granting summary

28 judgment in favor of the City where the only evidence of custom was the failure to

1  discipline officer involved in alleged constitutional violation at issue in the case).  The

2  reports appended to Hartrim's Response focus mostly on officer-involved shootings, and

3  do not address suspicion-less and illegal detentions, as alleged here.  The Court cannot

4  conclude, on the basis of a request by the ACLU concerning excessive force and

5  shootings, that a pattern and practice of unconstitutional detentions and *Terry* stops

6  exists.  Hartrim has failed to make the required showing as a matter of law.

7  **V.    CONCLUSION**

8        Accordingly, IT IS HEREBY ORDERED that CHC's Motion to Dismiss (dkt. no.

9  28) is GRANTED IN PART and DENIED IN PART.  Only Hartrim's negligence claim

10  against CHC survives summary judgment.

11        IT IS FURTHER ORDERED that LVMPD's Motion for Summary Judgment (dkt.

12  no. 29) is GRANTED IN PART and DENIED IN PART, as described herein.

13

14        DATED THIS 22nd day of February 2013.

15        _____

16        MIRANDA M. DU
          UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28